Good morning and welcome to the 11th Circuit. We're very happy to have you all here with us today on our final day of the sitting this week. I think you're all familiar with our lighting system, but just a quick review. If the yellow light goes on, that means you have two minutes left. And when the red light goes on, your time is up. We ask that you please respect our lighting system and wrap up as soon as you see the red light on. The only exception to that would be if we ask you a question. And then, of course, we want to hear your answer. We wouldn't have asked it. So please, of course, answer the question even if it's beyond time. And with that, the first case for today is UBS Financial Services, Incorporated v. David Efron. We'll hear first from Ms. Rothenberg. May it please the court and good morning. Good morning. I'm Leslie Rothenberg and I represent David Efron, who is the respondent below and the appellant here today. We're here today on Mr. Efron's appeal from a final order confirming an arbitration award. Mr. Efron firmly recognizes that arbitration may only be reversed under very limited circumstances and only under the grounds that are provided for by the FAA and they're clearly identified. We strongly submit that this is such a case. And I will focus my arguments on our two main arguments and the arguments I believe are our strongest arguments in this appeal. Number one, that the arbitrators committed misconduct by issuing an award that does not reflect that the arbitrators considered and actually resolved the dispositive issues they were charged with arbitrating in this case. Two, that the arbitrators exceeded their authority or so imperfectly executed it that Mr. Efron was denied his right to a fair hearing. And lastly, we'll address the fact that UBS's attorney's fees must be vacated because a different entity, UBS Financial Services, is the entity that actually paid for those fees and they were not a party to the contract and therefore any indemnification clause would not apply to that party. To be clear, Mr. Efron is not contending that the award must be vacated because the arbitrators simply got it wrong or got it very wrong. We understand the rules of the game. We accept that arbitration awards are not subject to vacator based upon an erroneous interpretation or an erroneous application of the law. However... So can I ask you this just to maybe kick us off? You said that you thought you had a couple of grounds that you thought were the strongest. Is the first one that you mentioned, this idea that the arbitral award didn't adequately summarize the issues, is that the first ground that you're traveling under? Yes. Well, I'm traveling under really two grounds under the FAA and that's under 10A subsection 3, misconduct, and 10A4, which is that the arbitrators did not either exceeded their authority or improperly executed that authority. But your point is that in failing adequately, you say, to summarize the issues, they violated each of those two. That's the substance of the allegation that you say goes to two different grounds. Correct. Well, can you just get to the meat of that contention? Yes. Well, we recognize that the parties didn't both agree to a reasoned award. So a reasoned award was not required in this case. However, the parties had agreed through contract. They both signed an agreement that was sent to them by FINRA to be bound by the rules of FINRA procedure and the code. Rule 1.290 requires that every award, not just reasoned awards, but every award must include the issues that the arbitrators actually resolved. We know that none of the material and the three dispositive issues are contained in the award as issues that the arbitrators actually resolved. Let me ask you this, and maybe this just shows my ignorance of arbitration procedure, but when there isn't a requirement of an unreasoned award, could the award be, in effect, a one-word opinion? No. And I think that is UBS's position. And actually, in the case of Catt Charter, this court addressed that issue and explained the difference in the different kinds of awards on a continuum. There is the award, which they say is a standard award that simply says this is the decision. Then on the other side of that continuum is awards that give a complete explanation and the law as to how they got to the conclusions that they reached. In between those two is a reasoned award. And just so I'm clear, given this FINRA rule that you cite that requires a summary of the issues, are you saying that a FINRA arbitration can never result in the one-sentence opinion? That is a procedural rule, a basic due process form of the award that they have all agreed, the arbitrators have agreed to follow, and the parties signed saying we're going to follow those rules. So let me ask you just a follow-up question. So why, though, in unreasoned award land, wouldn't we sort of look to the substance of the proceedings where the arbitrators, you know, we considered the pleadings, the testimony, the evidence, like why wouldn't we, you know, sort of look to the substance of the entire proceeding to figure out, to understand what the issues were? Like why would we sort of require the magic words? Well, because just knowing what the issues are doesn't mean that they actually resolve them. And that's critical because they may have gone back and had a disagreement about, you know, how to apply the law or which law to apply or whether, you know, the analysis on the conflict of law, and maybe they didn't reach that conclusion, or maybe they were prejudiced by the things that they heard during the arbitration. We know that EBS, instead of trying this simple contract interpretation case, put Mr. Efron on trial, and perhaps that influenced them and it sidetracked them. We don't know, but we know they're seasoned arbitrators. So we know they're seasoned FINRA arbitrations. They know the rules. And there's actually a category where they're supposed to put that specific information in that category, and they didn't include it. So there are, there are really two sort of sub-issues on this issue. The first one is whether the rule was violated. And the second one is, if the rule was violated, is that a good enough reason to set aside the arbitration, right? Yes. Okay. Now, on the FINRA rule that we're talking about, would you agree that that's a procedural rule? Yes. Okay. And so courts have said that a violation of FINRA procedural rules cannot support vacater. And so I wonder if you would respond to that. Yes, there's actually two cases, and both of them come out of the 11th Circuit. So I think they're both very relevant. The one case is Catt Charter, which I supplemented the record with, and it is a case actually that was decided by this circuit. And Catt Charter addressed this specific issue. And it says, first, this court agreed that the failure to comply with a mutually agreed upon contractual provision and agreement to arbitrate is grounds to vacate under 10A4. And it cites to suits v. Dean Ritter, which is another case out of the 11th Circuit. Next, and importantly, this court recognized that, quote, an arbitrator may also exceed her authority by failing to provide an award in the form required by an arbitration agreement. This arbitration agreement that all the parties signed and the arbitrators agreed to be bound by said you must do this. And so we say under Catt Charter, which was decided by this court, that this is grounds for vacater. Now, I know there's another case decided by this court, which was also relied on by the trial court judge. And that is Pochott. Pochott involved a discovery violation and an evidentiary ruling. And the case law is very clear that when you're talking about evidentiary rulings and discovery issues, that's not grounds to vacate an award. Let me understand just very briefly, Ms. Rothenberg, what would you have had them say that would have been the irreducible minimum to comply with the requirements of FINRA? We recognize that we needed to interpret this agreement. We did. We recognize that that required that there was a provision in the agreement to apply New York law. But there was an objection to applying New York law. We performed a choice of law analysis. And we applied the law of the jurisdiction we felt was appropriate. If they had done that, we'd be on very different grounds. Why, just so I understand, if an evidentiary error is not good enough, sort of per se is not good, and it's not a basis for vacature, why would this kind of like box checking, you know, sort of magic words requirement be? It seems, if anything, to me, the evidentiary error seems more sort of a violation of substantive justice or something than this thing. Well, an evidentiary ruling has always been within the sound discretion of the trier of fact, whether it's a judge or an arbitrator. But when you've agreed to a basic due process format in a form, they all walk in there expecting that that's what they're going to get in the end. When you look at the U.S. Supreme Court decisions, they say, if you cannot determine whether or not the arbitrators actually interpreted the law, then you must vacate. Because then they may have decided this on their own brand of industrial justice. That's how they define the term. So it's not coming from me. It's coming from U.S. Supreme Court that says you have to look at everything to determine whether or not they did actually perform these analyses. And there's nothing to give us that indication. They didn't indicate it in the award. We know that they were required to place that in the award. So what are we left with? We're left with the fact that these are seasoned arbitrators that didn't include these responsive issues in the award. And therefore, we must conclude that they did not consider or resolve them. All right. Thank you, Ms. Rothenberg. And you've reserved five minutes for rebuttal. We'll hear next from Ms. Zaharia. Good morning, and may it please the court. Amy Zaharia of Williams & Connolly for Appalachia UBS. In the words of this court, the law insists that losers in arbitration who resort to the courts continue to lose in all but the most unusual circumstances. And this is not the most unusual case warranting vacar. Efron has not carried his heavy burden to establish any of the FIA 10A grounds for vacar. And in particular, the arbitrators did not engage in misconduct or exceed their powers by declining to identify subsidiary legal questions like choice of law in the award. And I'll focus my arguments on that point since that's where Ms. Rothenberg focused her arguments. Now, just to be clear about what his argument is, it is that the arbitrators should have identified, just said that they resolved certain issues like choice of law. And the first problem with that argument is that we argued to the arbitrators, they didn't need to resolve choice of law because we would win under any law, Puerto Rico law or New York law. We made that clear in our post-hearing brief to the arbitrators. And so to the extent that what Mr. Efron is asking for is for the award to explain whether they agreed with that argument, whether they applied the choice of law provision or whether they did not, that's just a request for legal reasoning. And everyone agrees. Well, isn't there a difference between explaining the why and describing the what? The what is these are the issues in the case. FINRA says the award shall contain a summary of the issues. Was there a summary of the issues? In fact, there was a summary of the issues. Tell me where I would find a summary of the issues as opposed to a summary of the claims. The case summary identifies the claims and it references Mr. Efron's answer. He argued for application of Puerto Rico law and asserted his defenses. FINRA arbitrators do not understand rule 12904E to require them to identify particular legal questions that they answered. That could be a whole host of things. In this case, it could be every element of the breach of contract claim. It could be which entity paid the legal fees. It could be whether those legal fees were reasonable. All of those questions were questions the arbitrators had to decide. And these arbitrators did not list those questions either. So to come back to my question, if you look at the actual language they used, the claimant asserted the following causes of action, contractual indemnification, unjust enrichment, equitable contribution. The causes of action relate to a post-judgment settlement made in the district court in Puerto Rico. Unless specifically admitted in the statement of answer, respondent denied the allegations and asserted various defenses. In the counterclaim, respondent asserted the following causes of action, breach of implied contract and breach of fiduciary duty. The causes of action relate to the claimant's handling of the respondent's account subsequent to the ruling made in the Candelaria litigation. Unless specifically admitted in the answer to the counterclaim, plaintiff denied the allegations and asserted various affirmative defenses. Under other issues considered and decided, the arbitrators acknowledged they've read the pleadings. And there's no doubt what they read, laid out in stunning detail, every issue. Yes, your honor, we counted. But I guess what I'm simply asking amounts to two questions. One, did they really list the issues here? And two, does it matter? Did they have to? So let me take those questions in turn. Did they list the issues? Our position is, yes, they listed the issues. As arbitrators understand rule 12-904-E. Our fundamental position is rule 12-904-E does not require arbitrators to list subsidiary legal questions like choice of law. The process of even identifying what those legal questions are is an exercise in legal reasoning. And to interpret rule 12-904-E in that way would be contrary to the rest of rule 12-904, which does not require legal reasoning. If the court has any questions about how that word is interpreted in FINRA arbitration proceedings, I would submit the best evidence is other FINRA awards. And every other FINRA award that we've looked at looks just like this one, including the first one in this case, which is that ECF-10-4, the one that was vacated. In the case summary, the arbitrators, a different panel of arbitrators, identified the causes of action, not the subsidiary legal questions. Let me go back to the question that Judge Rosenthal asked. Let's assume, arguendo, that you didn't really list the issues. You listed the claims and where the claims were filed and what court and so on and so forth. But you didn't break out 1, 2, 3, 4, 5. These are the issues in the case. Although you pled them with great particularity and the arbitrators said, we've reviewed all of the pleadings. Is that fatal? Not at all, Your Honor. Does that cause a vacater if you didn't list the summary of the issues? No, Your Honor. I don't see how that could be grounds for vacater when the FAA itself requires no reasoning at all. It would have been perfectly appropriate under the FAA itself to just have an award that says, we rule for UBS and here's the amount we give UBS. The party's agreement, the master account agreement, expressly provided that the arbitrators did not need to provide any legal reasoning. And so to vacate a perfectly appropriate award based on a rather strict reading of the word issue in Rule 12-904E, we submit would be problematic. It would swamp courts in this circuit with petitions to vacate FINRA awards since this award is perfectly consistent with other FINRA awards. And it would defeat the purpose of arbitration by requiring arbitrators to list all of these subsidiary legal questions they may or may not have resolved as in this case. Now to address the Cat Charter case, I'm not sure why counsel thinks that case helps them. After all, in that case, this court reversed a district court that vacated an award. And the court made clear that it was reluctant to give a strict interpretation to the party's agreement requiring a reasoned award when doing so would require vacating an otherwise perfectly appropriate and legitimate award. And I submit the court should do the same thing here. And as your honor indicated, these issues were addressed to these arbitrators over and over again. By my count, Mr. Efron argued his choice of law and Puerto Rico arguments at least six different times, before the proceedings, during the proceedings, after the proceedings, spanning 50 pages of transcript and briefing. The arbitrators considered them, they engaged with these issues orally during the proceeding. And let me just briefly address the issue of fees since counsel indicated that she wanted to talk about the issue of the fees. And in particular, Mr. Efron has an argument that the wrong UBS entity paid the fees. Let me just make three arguments about that. First of all, that's just a question on the merits. That was an issue for the arbitrators to decide. He raised that question to the arbitrators. They obviously rejected it. And he has tied that argument to no 10A ground for vigor in his briefing. Second, the argument is just plain wrong on the merits. There was testimony in the arbitration proceedings from a UBS witness at ECF 45.1, pages 502 to 503, that UBS Puerto Rico, which was the entity at issue, was debited for all of the attorney's fee payments. And then to the extent that Mr. Efron argues that we somehow waived this argument by failing to address it in our brief, he didn't develop the argument in his opening brief. He didn't cite any actual evidence. He didn't cite any 10A grounds, no authority for that argument. And you can't waive an argument to an undeveloped argument. Unless the court has any further questions, we urge the court to affirm. Thank you, Ms. Zaharia. And Ms. Rothenberg, you've reserved five minutes. If you don't mind, would you address at the outset, we heard Judge Marcus's comprehensive recitation of what the award said with respect to the claims. Why isn't that good enough? Are we sort of micromanaging or flyspecking the word issue? Why isn't the summary of the claims that he read? It went on and on and on. Why isn't that good enough? Because not only did the arbitrators just say these are what the claims are, when you go to the specific provision of the award where they're supposed to identify the issues they resolve, here's what they said. Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties. If this goes to my earlier question, like why wouldn't we, especially given the high bar that the FAA requires for vacature, why wouldn't we, especially in unreasoned award land, why wouldn't we read this five-page award? It's unreasoned, but it's a five-page award. Why wouldn't we read that statement in the light of the statement of the claims? Which is pretty comprehensive. Well, if FINRA believed that that was sufficient and that they were going to operate under those rules, they would not have created 12904. But what about Ms. Zaharia's point that, maybe you dispute this, but that every FINRA award that she's seen looks just like this one. Are they all invalid? Well, they're not in the record and I have not seen them. So I don't know where that comes from. I mean, it's probably judicially noticeable. We could probably just go find them. I mean, in your experience, do most FINRA awards look like this? I have no idea. I don't typically handle arbitration cases in front of FINRA. I was not the lawyer that handled this one. I'm only the appellate attorney in this case. So the point you're trying to make is there was misconduct. They didn't do their job. They didn't give Mr. Efron a fair hearing. Correct. If you look at it, the arbitration itself went on over the course of five days when evidentiary materials were presented. Very thorough on all sides. If you look at it during the closing argument, Efron's attorney says, good afternoon, members of the panel. I appreciate the time and sacrifice you've made during this week, during this final hearing, and the time you have taken to carefully listen to all of the witnesses and consider all of the evidence during his final hearing. I appreciate the fairness and with the objectivity with which you have attended to the various issues that have arisen during this hearing and so on and so forth. I know what you say when you argue to a panel, truly. And this is the stuff you kind of say. But if you look at the hearing, it sure looked like this panel made a very, very thorough attempt to look at the stuff. And the parties really covered the waterfront. Why isn't that enough? How do we vacate, again, to use the point that Judge Newsom made on the theory that you want us to read some very, very particular language into summary of the issues and vacate when they did everything you could have expected them to do and maybe more? Well, I'm not so sure that they did. And the reason... Tell me why not. Because I think it was because of the way that UBS tried this matter. If they had tried this cleanly as a contract interpretation case, then I might be more inclined to agree with you. But they tried this case as a case against Mr. Efron personally. When you look at the hearing transcript, the first 80 pages of the first day was an attack on Mr. Efron for no reason whatsoever. Because this was a contract interpretation case. There had been a judgment finding that UBS was negligent. UBS admitted that they were negligent. They admitted that there was nothing that Mr. Efron said or did that influenced their decision to lift the restraints on these accounts and then to take millions of dollars out of his accounts when those restraints should have been on those accounts. So when you go to the lengths that UBS went to in this case to try to influence and prejudice the arbitrators, you have to ask yourself, did it work? And if they did not include in this award that they actually looked at the choice of law. And I think also you have to look. And I think that's one of the things that the district court area not doing is when you're determining whether or not there was some prejudice by not listing these things in the award, you have to look at the agreement itself. Well, the agreement for indemnification was for account transactions. This was not account transaction. If you look at the choice of law, you know that you had to apply Puerto Rico law because New York had absolutely no context whatsoever with the transaction or the parties. And I beg to differ with UBS. If you apply Puerto Rico law, indemnification does not stand because they have. That sounds much like you're saying they just got it wrong. Well, I'm saying you have. As opposed to saying they didn't consider it at all. Well, I'm saying if if you look at the fact they didn't say they resolve those issues and you look at how this case was tried and you look at the various things that they were supposed to look at, they must have gotten all of it wrong then. And maybe they did, but they should have told us how they reached the result. All right. Thank you, counsel. Thank you so much.